IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| VICKY S. RICKS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. RWT 14-1607 |
| v. | * | |
| | * | |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Acting Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |
| | ************ | |

## REPORT AND RECOMMENDATION

Plaintiff *pro se* Vicky S. Ricks seeks judicial review under 42 U.S.C. § 405(g) of a final

decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying

her application for disability insurance benefits ("DIB") under Title II of the Social Security Act.

Before the Court are Plaintiff's Motions for Summary Judgment and for Entry of Default and

Default Judgment (ECF Nos. 27, 29, 36, 37, 41) and Defendant's Motion for Summary Judgment

(ECF No. 30).[1]  Under Standing Order 2014-01, this matter has been referred to the undersigned

for pretrial management and for proposed findings of fact and recommendations under 28 U.S.C.

§ 636(b)(1)(B) and L.R. 301(5)(b)(ix).  No hearing is necessary; therefore, Plaintiff's motion for

hearing (ECF No. 17) is **DENIED**.  L.R. 105(6).  For the reasons that follow, it is

**RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 30) be

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as
a procedural means to place the district court in position to fulfill its appellate function, not as a
device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards."
*Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary
judgment accompanied by a remand to the Commissioner results in a judgment under sentence
four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

**DENIED**, Plaintiff's Motions for Summary Judgment and for Entry of Default and Default Judgment (ECF Nos. 27, 29, 36, 37, 41) be **DENIED**, and this matter be **REMANDED** under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

**I**

**Background**

Plaintiff was born in 1967, has a high-school education, and previously worked as a barista and security worker.  R. at 25, 141, 146.  Plaintiff applied for DIB on June 3, 2013, alleging disability beginning on August 23, 2012, due to obsessive-compulsive personality disorder (or possibly chronic obstructive pulmonary disorder), diabetes, uterine fibroids, thyroid dysfunction, and bilateral knee impairment.  R. at 22, 122-25, 145.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 72-90.  On December 12, 2013, ALJ John A. Thawley held a hearing in Washington, D.C., at which Plaintiff *pro se* and a vocational expert ("VE") testified.  R. at 26-71.  On January 29, 2014, the ALJ issued a decision finding Plaintiff not disabled through the date late insured ("DLI") of June 30, 2011.  R. at 16-25.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on March 18, 2014.  R. at 1-15.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On May 16, 2014, Plaintiff filed a *pro se* complaint in this Court seeking review of the Commissioner's decision.  ECF No. 1.  On April 8, 2015, counsel for Defendant entered an appearance (ECF No. 8) and was substituted on April 20, 2015 (ECF No. 16).  On April 9, 2015, Plaintiff filed a Motion to Seal.  ECF No. 10.  On April 20, 2015, Plaintiff filed a motion for

hearing.  ECF No. 17.  On June 22, 2015, the case was referred to the undersigned for a report and recommendation for the disposition of this matter.  ECF No. 26.  On July 10, 2015, Plaintiff filed a Motion for Entry of Default and Default Judgment.  ECF No. 27.  On August 6, 2015, Plaintiff filed a Motion for Summary Judgment and for Entry of Default and Default Judgment. ECF No. 29.  On October 5, 2015, Defendant filed her Motion for Summary Judgment.  ECF No. 30.  On November 10, 2015, Plaintiff filed a response to Defendant's Motion for Summary Judgment (ECF No. 35) and a Motion for Summary Judgment and for Entry of Default and Default Judgment (ECF No. 36).  Plaintiff also requested default judgment and sanctions against the state of Maryland for retaliation, harassment, stalking, inflicting bodily harm, false arrest, malicious arrest, targeting family members as a result of civil proceedings, malicious prosecution, false traffic reports, and false and malicious surveillance.  ECF No. 36-1.

On January 5, 2016, Plaintiff again filed Motions for Summary Judgment and for Entry of Default and Default Judgment.   ECF Nos. 37, 41.   She also requested a "mandatory injunction," "permanent injunction," "preventive injunction," and "temporary injunction" against "parties in the State of Maryland, parties acting on behalf of the State of Maryland, and parties connected to the State of Maryland" in order "to cease and desist their malicious activities resulting from civil actions, and or complaints made by the plaintiff, on the plaintiff's behalf, and parties connected to the plaintiff, whether personal or professional connected."  ECF No. 38. Plaintiff further sought recusal of the District Judge assigned to this case.  ECF No. 39.  The matter is now fully submitted.

II

**Summary of Evidence**

Plaintiff stopped working on October 15, 2009, but she alleges that she became disabled

on August 23, 2012.  R. at 141, 145.  On August 28 and October 10, 2013, state agency medical

consultants found insufficient evidence of disability before Plaintiff's DLI of June 30, 2011.  R.

at 74, 79-80.

A.     **Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> At the hearing, [Plaintiff] was asked why she was unable to work. Although the relevant time period was pointed out to [Plaintiff], her testimony at least at times referred to the present tense.  She discussed an inability to sit or stand for prolonged periods, frequent dizzy spells, heavy vaginal bleeding, and chronic pain in her left arm and bilateral knees.  [Plaintiff] testified that her diabetes is her greatest problem.  [Plaintiff] testified that her diabetes brings on the frequent dizziness.  She testified that her dizzy spells occur approximately two times each week and last for 1-3 hours.  [Plaintiff] also testified that she feels fatigued every day for at least seven hours of the day.  [Plaintiff] testified that her diabetes is not insulin-dependent.  She testified that she had been prescribed Metformin by her primary care physician, but that she had been referred to an endocrinologist.  [Plaintiff] testified that she had not seen the endocrinologist because she could not afford specialist treatment, specifically the co-payment.

> [Plaintiff] alleged active COPD, with frequent night coughing and sleep disturbance.  [Plaintiff] testified that her coughing is "uncontrollable" and goes on all night.  [Plaintiff] explained that she has shortness of breath with coughing, but not much shortness of breath otherwise.  [Plaintiff] testified that she takes prescription cough syrup.  She testified that she also had been prescribed an inhaler and a nebulizer, but that she had not had the money to fill her prescriptions.

> [Plaintiff] testified that Dr. Wilson attributed [her] arm and bilateral knee pain to "rheumatoid arthritis."  However, she later explained that she had been referred to an orthopedist for evaluation (as opposed to a rheumatologist) which suggests osteoarthritis (as opposed to rheumatoid arthritis).  She testified that she had also discussed physical therapy with Robert Ball, M.D., a primary care physician.  [Plaintiff] treats her pain with prescription-strength Motrin (800 milligram) and over the counter Tylenol.  She also explained that Dr. Ball prescribed tramadol.  She had not had the prescription filled.  [Plaintiff] described

4

her arm pain as excruciating and recounted a recent hospital visit, where her provider was unable to use the blood pressure cuff on her secondary to pain.

As it relates to [Plaintiff's] daily activities, [Plaintiff] testified that she lives in an apartment with her husband, who works full time for the Federal government. [Plaintiff] testified that she typically slept until 2:00-3:00 in the afternoon. She spent the remainder of her daily [sic] relaxing and watching television. [Plaintiff] testified that the rest alleviated her pain—particularly on days that the weather was bad. She testified that she spent those days in her bed, curled in the fetal position. [Plaintiff] testified that she sometimes listened to music and talked to friends and family on the phone. She used her computer twice per week to perform research or type up correspondence. She also enjoyed playing internet slot machine games. [Plaintiff] testified that she shared housework with her husband, but that he performed most of [the] grocery shopping and cooking. He also did the laundry for the family. [Plaintiff] testified that she saw her family and adult son (age 30) infrequently.

R. at 23-24; *see* R. at 42-62.

## B.    VE Testimony

The VE classified Plaintiff's past work as a barista as light and unskilled and her past work as a security worker as light and semi-skilled.[2] R. at 64. A hypothetical person of Plaintiff's same age, education, and work experience with the RFC outlined below in Part III would be able to perform Plaintiff's past work. R. at 64-65. This person with these limitations, however, could not perform Plaintiff's past work if limited instead to sedentary work,[3] but the person could perform other work in the national economy, such as a quality-control worker, finish machine tender, or grading and sorting worker. R. at 65-66. A person's inability to engage in sustained work activity for a full eight-hour workday on a regular and consistent basis

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* § 404.1568(a). "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." *Id.* § 404.1568(b).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

would preclude all jobs. R. at 66. The VE's testimony was consistent with the Dictionary of Occupational Titles.[4] R. at 68.

## III

### Summary of ALJ's Decision

On January 29, 2014, the ALJ found that, through the DLI, Plaintiff (1) had not engaged in substantial gainful activity; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was able to perform her past relevant work. R. at 21-25. The ALJ thus found that she was not disabled through the DLI of June 30, 2011. R. at 25.

In so finding, the ALJ found that, through the DLI, Plaintiff had the RFC

to perform light work, as defined in 20 CFR 404.1567(b), with the following additional limitations: no operation of foot controls; no climbing of ladders[,] ropes[,] and scaffolds; no more than occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling. [Plaintiff's] pushing and pulling is limited to 10 pounds frequently and 20 pounds occasionally. [Plaintiff] should perform no more than occasional overhead reaching with the left non-dominant upper extremity and no more than frequent bilateral handling, fingering, or feeling. Finally, [Plaintiff] should not be exposed to extreme heat/cold, excessive wetness/humidity, excessive vibration, or to hazards (such as moving machinery and unprotected heights).

R. at 22.

---

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993); *see Pearson v. Colvin*, __ F.3d __, No. 14-2255, 2015 WL 9204335, at *1 n.1 (4th Cir. Dec. 17, 2015).

The ALJ considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. at 24.  The ALJ found that "the record in this case contains very little medical evidence to substantiate [Plaintiff's] allegations." R. at 22.  Although the ALJ relied upon Plaintiff's testimony in assessing her RFC, the ALJ "also did not believe that [Plaintiff's] own testimony supported a finding of disabling physical impairment—particularly when [she] has not completed her prescribed treatment."  R. at 24.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),  1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made,

the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

**Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

"To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status."  *Id.* at 655-56.  "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  At step two of the five-step sequential evaluation process, the ALJ found that, through the DLI, Plaintiff had the severe impairments of diabetes mellitus—type II, thyroid dysfunction/goiter, hyperlipidemia, hypertension, arthropathy, and uterine fibroids.  R. at 21.  The ALJ found, however, that Plaintiff's alleged obsessive-compulsive disorder and chronic obstructive pulmonary disease were not medically determinable impairments and thus not severe.  R. at 21.  Plaintiff apparently contends that, although the ALJ found that she had severe impairments through the DLI, the ALJ erred at step three in finding that she did not have an impairment or combination of impairments through this date that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (R. at 22).  ECF No. 25.  Plaintiff appears to maintain that her impairments meet or equal Listings 1.02, 1.04, 3.02, 5.00, 9.00, and 12.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.02, 1.04, 3.02, 5.00, 9.00, and 12.04.  ECF No. 25 at 2-3.

"[T]he administrative hearing process is not an adversarial one, and an ALJ has a duty to investigate the facts and develop the record independent of the claimant or his counsel." *Pearson*, 2015 WL 9204335, at *5 (citing *Cook v. Heckler*, 783 F.2d 1168, 1173-74 (4th Cir. 1986)).

> Putting the responsibility on the ALJ to identify the relevant listed impairment(s) is consistent with the nature of Social Security disability proceedings which are "inquisitorial rather than adversarial" and in which "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000) (alteration in original) (quoting *Sims*, 530 U.S. at 111, 120 S. Ct. at 2085); *accord Lancaster v. Apfel*, No. CIV. A. PJM 00-1030, 2001 WL 214206, at *4-6 (D. Md. Jan. 22, 2001). "Such reasoning is further supported by the fact 'that a large portion of Social Security [disability benefits] claimants either have no representation at all or are represented by non-attorneys.'" *Burnett*, 220 F.3d at 120 n.2 (alteration in original) (quoting *Sims*, 530 U.S. at 112, 120 S. Ct. at 2086).

The Commissioner contends that, "[a]lthough Plaintiff has medical conditions mentioned in the listings, Plaintiff did not meet all of the requirements of any listing prior to her DLI," and some diagnoses are after Plaintiff's DLI. Def.'s Mem. Supp. Mot. Summ. J. 9, ECF No. 30-1. However, "post-DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012). In any event, as the Commissioner did in *Fox v. Colvin*, __ F. App'x __, No. 14-2237, 2015 WL 9204287 (4th Cir. Dec. 17, 2015) (per curiam), she invites the Court to "engag[e] in an analysis that the ALJ should have done in the first instance." *Fox*, 2015 WL 9204287, at *4. "[A] court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say," however. *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009); *see Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). As noted in Part V above, it is not the province of the Court to engage in fact-finding

exercises in the first instance. *Fox*, 2015 WL 9204287, at *3 (citing *Radford*, 734 F.3d at 296;

*Cook*, 783 F.2d at 1173). Rather,

> [a] necessary predicate to engaging in substantial evidence review is a record of
> the basis for the ALJ's ruling. The record should include a discussion of which
> evidence the ALJ found credible and why, and specific application of the
> pertinent legal requirements to the record evidence. If the reviewing court has no
> way of evaluating the basis for the ALJ's decision, then "the proper course,
> except in rare circumstances, is to remand to the agency for additional
> investigation or explanation."

*Radford*, 734 F.3d at 295 (citations omitted).

This Court previously determined that, "[u]nder *Cook*, the duty of identification of

relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if

there is ample evidence in the record to support a determination that the claimant's impairment

meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D.

Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of

the listed impairments without some significant indication in the record that the claimant suffers

from that impairment." *Id.* In *Fox*, however, the Fourth Circuit held that the ALJ erred in failing

to provide sufficient reasoning for his finding that the claimant's impairment did not meet or

equal the requirement of Listing 11.14 for peripheral neuropathy because the ALJ's findings

lacked the "necessary predicate" for the court to engage in meaningful review.[6] *Fox*, 2015 WL

---

[6] The language used in the ALJ's decision that the Fourth Circuit found problematic read as
follows:

> Although the claimant has "severe" impairments, they do not meet the criteria of
> any listed impairments described in Appendix 1 of the Regulations (20 CFR,
> Subpart P, Appendix 1). No treating or examining physician has mentioned
> findings equivalent in severity to the criteria of any listed impairment, nor does
> the evidence show medical findings that are the same or equivalent to those of any
> listed impairment of the Listing of Impairments. In reaching this conclusion, the
> undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

9204287, at *4 (quoting *Radford*, 734 F.3d at 295).   Because the ALJ failed to explain his determination that the claimant's impairment did not meet Listing 11.14, the error was not harmless and warranted remand.   *See id.* at *5.   The court in *Fox* further held that the district court erred in engaging in its own "fact-finding expedition," despite the ALJ's failure to explain sufficiently.   *Id.* at *4.   Thus, the Court should likewise decline to find facts here in the first instance and instead remand this case, as "it is not [the Court's] role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."   *Id.* at *5.

Plaintiff also filed Motions for Entry of Default and Default Judgment (ECF No. 27, 29, 36, 37, 41) and to Seal (ECF No. 10).   Entry of default is not appropriate in this case where Defendant appeared and filed the administrative transcript (ECF Nos. 8, 20).   *See* Fed. R. Civ. P. 55(a) (entry of default is appropriate when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend").   Furthermore, a default judgment may be entered against an agency of the United States "only if the claimant establishes a claim or right to relief by evidence that satisfies the court."   Fed. R. Civ. P. 55(d).   Entry of default judgment also would violate the "strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed on their merits."   *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).   Thus, it is recommended that Plaintiff's Motions for Entry of Default and Default Judgment be **DENIED**.

In her Motion to Seal, Plaintiff seeks to seal or redact her name, address, damages sought, and telephone number.   ECF No. 10.   Plaintiff fails to include, however, "proposed reasons supported by specific factual representations to justify the sealing" and "an explanation why

---

*Fox*, 2015 WL 9204287, at *4.

alternatives to sealing would not provide sufficient protection." L.R. 105.11. In an action for Social Security benefits, the parties are not required to redact a plaintiff's Social Security number from court filings, Fed. R. Civ. P. 5.2(b)(5), (c), but remote electronic access to the court file is limited. Fed. R. Civ. P. 5.2(c). According to the Advisory Committee's Note to Rule 5.2, although in Social Security cases "[r]emote electronic access by nonparties is limited to the docket and the written dispositions of the court unless the court orders otherwise," the rule contemplates "that nonparties can obtain full access to the case file at the courthouse, including access through the court's public computer terminal." *See Crossman v. Astrue*, 714 F. Supp. 2d 284, 289 (D. Conn. 2009). In any event, even if the redaction requirement applied, Plaintiff waived the requirement by filing her own information without redaction and not under seal. *See* Fed. R. Civ. P. 5.2(h); *Haworth v. Astrue*, No. EDCV 08-1192SJORC, 2009 WL 1393678, at *1 n.2 (C.D. Cal. May 14, 2009). Thus, Plaintiff's Motion to Seal (ECF No. 10) should be **DENIED**.

On January 5, 2016, Plaintiff filed a motion of recusal of the District Judge assigned to this case based on "a lack response about this matter from judge's chambers" and a "failure on behalf of the United States District Court of Maryland/judge to take necessary action in efforts to resolve this ongoing subject matter." ECF No. 39. Plaintiff points to no circumstances, however, in which the District Judge's "impartiality might reasonably be questioned" under 28 U.S.C. § 455(a) and no circumstances under 28 U.S.C. § 455(b), such as personal bias or prejudice, that would warrant disqualification. Because Plaintiff's grounds for seeking recusal of the District Judge in this case do not warrant his disqualification, it is recommended that Plaintiff's motion of recusal (ECF No. 39) be **DENIED**.

In sum, for the reasons stated above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (ECF No. 30) be **DENIED**, Plaintiff's Motions for Summary Judgment and for Entry of Default and Default Judgment (ECF Nos. 27, 29, 36, 37, 41) be **DENIED**, Plaintiff's Motion to Seal (ECF No. 10) be **DENIED**, Plaintiff's motion of recusal of the assigned District Judge (ECF No. 39) be **DENIED**, and this case be **REMANDED** under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

## VII

### Recommendation

For the reasons set forth above, it is respectfully recommended as follows:

(1) The Court **DENY** Defendant's Motion for Summary Judgment (ECF No. 30);

(2) The Court **DENY** Plaintiff's Motions for Summary Judgment (ECF Nos. 29, 36, 37, 41);

(3) The Court **DENY** Plaintiff's Motions for Entry of Default and Default Judgment (ECF Nos. 27, 29, 36, 37, 41);

(4) The Court **DENY** Plaintiff's Motion to Seal (ECF No. 10);

(5) The Court **DENY** Plaintiff's motion for sanctions against the state of Maryland (ECF No. 36-1) as frivolous;

(6) The Court **DENY** Plaintiff's request for injunctive relief (ECF No. 38) as frivolous;

(7) The Court **DENY** Plaintiff's motion of recusal of the District Judge assigned to this case (ECF No. 39);

(8) The Court **REMAND** this case under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings; and

(9) The Court **CLOSE** this case.

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be served and filed within seventeen days of the date of this Report and Recommendation under Fed. R. Civ. P. 6(d), 72(b), and L.R. 301(5)(b).  Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within seventeen days after the date of this Report and Recommendation may result in the waiver of any right to a *de novo* review of the determinations contained in the report, and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Date: January 8, 2016                                  _____/s/_____
                                                                       Thomas M. DiGirolamo
                                                                       United States Magistrate Judge